THE ROYER WHEEL CO. *v.* LUNHAM & MOORE.

*Brokers—Forwarding  agents—Authority  to  pay  freight—. Shipper  not  liable  for  voluntary  payments.*

1. A broker employed as a special agent for the sole purpose of forwarding a shipment of goods to England, which goods are shipped f. o. b. steamer, New York, the bill of lading stating that the broker is but a forwarding agent, has no authority to pay the freight to the steamship company and charge it to the shipper.

2. In such case the forwarding agent is not liable to the steamship company for the freight, and, having voluntarily paid it, cannot recover the amount so paid from the shipper.

(Decided  January  15,  1923.)

ERROR: Court of Appeals for Hamilton county.

*Mr. Robert A. Taft,* for plaintiff in error.
*Mr. H. K. Rogers* and *Mr. Landon L. Forchheimer,* for defendants in error.

Cushing, J.  In the trial court, plaintiffs claimed that they were employed by the Royer Wheel Company as brokers to ship eleven crates of wheels to Thomas McConkey & Company, Belfast, Ireland, and six crates to Joseph Owen & Sons, Ltd., Liverpool, England; that pursuant to their duties under the contract they shipped the wheels and paid freight in the sum of $1688.46, and insurance, storage and other expenses amounting to $64.62, for which they ask judgment with interest.

The defendant offered to confess judgment for $41.42 for certain expenses, pleaded a general denial, and stated three separate defenses, and a counterclaim asking for damages against the plaintiffs in the sum of $676.36, with interest, for failure of plaintiffs to properly perform their duty.  In our view of the case it will not be necessary to consider this counterclaim further.

The facts are practically undisputed, and are:

In December, 1915, the Royer Wheel Company wrote McConkey & Company and Owen & Sons, Ltd., quoting prices and terms, f. o. b. vessel New York City, on Warner Wheels.

February 16, 1916, McConkey & Company ordered as per quotation eleven crates of wheels.

March 10, 1916, Owen & Sons ordered six crates of wheels, f. o. b. as stated, with some modification as to the terms of payment.  This was accepted by the consignor.  The wheels were shipped f. o. b. vessel New York City.

The Wheel Company paid all freight and charges, pursuant to this agreement, until the wheels were loaded on the vessel.

March 30, 1916, the English Government issued an embargo against certain classes of freight,

which included the wheels in question. The embargo was not absolute. Importation into England could be had if an importer's license was first secured from the Board of Trade.

The agreement between Lunham & Moore and the Royer Wheel Company is set out in their correspondence. April 24, 1916, the Wheel Company wired Lunham & Moore:

"Wire our expense if you can forward some car wheels two-thirds to Belfast, Ireland, one-third Liverpool, England."

On the same day Lunham & Moore wrote quoting:

"Ninety-five cents per cubic foot f. o. b. steamer New York City to Liverpool and one dollar and ten cents cubic foot from f. o. b. steamer through to Belfast, Ireland."

This was an acceptance of the Wheel Company's offer to employ them to forward the wheels, and fixes their status as forwarding agents or intermediate consignees.

The Wheel Company shipped the wheels from Aurora, Indiana, to Lunham & Moore as forwarding agents. The wheels reached Hoboken May 17, 1916, and were finally loaded on the steamship Celtic of the White Star Line. On the day the ship sailed June 8, 1916, Lunham & Moore took the steamship company's bill of lading to themselves for delivery in Liverpool, England, and Belfast, Ireland. At the time of shipment, the freight was not paid.

On reaching Liverpool, the consignees refused to receive the wheels, and assigned as a reason the embargo. Neither the consignees nor Lunham & Moore took out the necessary importer's license,

and the wheels were finally confiscated by the English Government.

June 21, 1916, Lunham & Moore wrote the Wheel Company that the ocean freight had not been paid, that it had gone forward, and as soon as all charges were ascertained they would be billed to their customers at Lunham & Moore's London office. These bills of lading were sent by Lunham & Moore to their Liverpool agents, who it is claimed secured the goods and paid the freight to the White Star Line on June 22, 1916.

The principal question for determination is the extent of the authority of the agents, Lunham & Moore, to pay money and bind the Royer Wheel Company. In other words, were they authorized to pay the freight to the steamship company, and charge it to the Royer Wheel Company?

In *Dart* v. *Ensign,* 47 N. Y., 619, it was held that the receipt of goods by an agent for the owner in the course of their transit, and for a special pur-pose by virtue of a bill of lading which did not impose the payment of the freight as a condition of the receipt, did not create or imply any obligation on the part of the agent to pay the freight.

The freight was shipped f. o. b. vessel New York City. This in commercial transactions means that the title of the goods was transferred to the con-signees on board the vessel at New York, unless otherwise agreed upon.

In *Hoffman* v. *Gosline,* 172 Fed. Rep., 113, Judge Warrington, delivering the opinion of the court, at page 117, uses this language:

"It is not open to serious dispute that the contract under review discloses a common intent in the parties to transfer title to the coal, when placed

upon the cars and delivered into the custody of the carrier. This is but the ordinary effect to be given to 'f. o. b. mines.' ''

There was no express or implied authority in the contract between the parties for Lunham & Moore to consign these goods to themselves at Liverpool. Lunham & Moore were special agents for the one purpose of forwarding the goods. Such agents must carry out their contract strictly, and if this is not done, the principal will not be bound. The steamship company was advised that they were but forwarding agents. It was so stated in the bill of lading issued for the shipment of the goods. See 1 Mechem on Agency (2 Ed.), Section 742.

2 Hutchinson on Carriers (3 Ed.), Section 809, states the rule thus:

"Nor does a mere intermediate consignee, to whose care the goods are consigned for further transportation to the ultimate consignee for whom they are intended, the facts being known to the carrier or shown by his bill of lading or receipt, become liable by receiving the goods as a mere forwarder. But in such cases the consignor, or consignee at destination, as the one or the other may be the owner, becomes liable to the carrier."

From the foregoing it is certain that Lunham & Moore were limited agents, and that there was no obligation on their part to pay the freight.

The remaining question then is, whether this voluntary payment can be recovered from the consignor.

In *Valley Railway Co.* v. *Iron Co.*, 46 Ohio St., 44, the court holds:

"The rule, that a payment voluntarily made

under a mistake of law, but with a full knowledge of the facts, cannot be recovered back, rests upon general principles of public convenience, and applies to a corporation as well as to a natural person.''

In *Cincinnati* v. *Gas Light & Coke Company*, 53 Ohio St., 278, it was held:

''A payment made by reason of a wrong construction of the terms of a contract, is not made under a mistake of fact, but under a mistake of law, and if voluntary cannot be recovered back.''

The conclusion is that Lunham & Moore were not such agents as would entitle them to recover for a voluntary payment of freight.

The judgment of the court below will be reversed and the cause remanded for further proceedings according to law.

*Judgment reversed, and cause remanded.*

HAMILTON, P. J., and BUCHWALTER, J., concur.